IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SHEILA MARIE MONTOYA ELLISON,

        Plaintiff,

vs.                                      No. CIV 99-359 LFG/RLP

LOVELACE HEALTH SYSTEMS,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      THIS MATTER comes before the Court on Defendant Lovelace Health Systems, Inc.'s ("Lovelace") Motion for Summary Judgment [Doc. 42], filed May 17, 2000.  In accordance with the District's motion package rule, the response of Plaintiff Sheila Marie Montoya Ellison ("Ellison") and the reply by Lovelace were also filed on that date.  This matter will be resolved on the parties' submissions; oral argument is not necessary.

      Ellison brings suit under Title VII and the Age Discrimination in Employment Act (ADEA), alleging that she was terminated from her employment with Lovelace because of her age and national origin, and in retaliation for protesting allegedly unlawful business practices.  Lovelace moves for summary judgment in its favor, asserting four grounds:  (1) Ellison was never an employee of Lovelace; (2) Ellison released Lovelace from liability under a signed agreement in connection with her severance package; (3) Ellison has failed to exhaust her administrative remedies against Lovelace; and (4) Ellison agreed to binding arbitration, in lieu of litigation, of any employment-related claim arising from her termination.  Because the Court finds that the agreement signed by Ellison released

Lovelace from liability as a matter of law, summary judgment will granted on the second ground noted above. The other grounds, therefore, need not be considered.

## Background

Ellison was employed by Connecticut General Life Insurance Company ("CGLIC") until early 1998. At that time, CGLIC was wholly owned by Connecticut General Corporation, which was wholly owned by CIGNA Holdings, Inc., which in turn was wholly owned by CIGNA Corporation. Connecticut General Corporation also owned one hundred per cent of the stock of CIGNA Health Corporation, which owned all of the stock of Lovelace Health Systems, Inc. ("Lovelace"), the Defendant herein. (Affidavit of Ron J. Howrigon, hereafter referred to as "Howrigon Affidavit," Ex. A to Defendant's Memorandum Brief in Support of its Motion to Dismiss, Doc. 35; Affidavit of Carol Shelton dated December 1, 1999, hereafter referred to as "Shelton Affidavit II," Ex. A to Defendant's Reply to Plaintiff's Response to Motion to Dismiss, Doc. 22).

Thus, on the corporate "family tree," CGLIC was a sibling company to CIGNA Health Corporation, which was the parent of Lovelace. The parties to the release which figures in this motion for summary judgment were Ellison and CIGNA HealthCare, which is designated in the Agreement as the "Employer." This particular entity, CIGNA HealthCare, does not appear in the corporate family tree, but Howrigon states in his affidavit that CIGNA HealthCare is "an operating division of CIGNA," apparently referring to CIGNA Corporation. Howrigon also asserts that Lovelace and CGLIC, both indirect subsidiaries of CIGNA, are part of the CIGNA HealthCare operating division. He states that CIGNA HealthCare entered into the Agreement on behalf of CGLIC.

Ellison was the Provider Information Manager for CGLIC until March 21, 1998. (Plaintiff's

Response to Defendant's Motion for Summary Judgment, Doc. 44, at 2, ¶ 5; hereafter referred to as "Plaintiff's Response"; Howrigon Affidavit, at 2).  Although employed by CGLIC, Ellison worked at the corporate offices of Lovelace, provided services to Lovelace, and reported to Lovelace supervisors.  (Plaintiff's Response, at 1-2; Howrigon Affidavit, at 2).

On February 20, 1998, Ellison was notified by Howrigon, who was at the time an officer with Lovelace, that her position was going to be eliminated due to a corporate restructuring.   At a meeting lasting approximately 30 minutes, Howrigon presented Ellison with the proposed severance package which had been provided by CGLIC.  It included an Agreement and Release  for the signatures of Ellison and CIGNA HealthCare as the "Employer." (Ex. 1 to Affidavit of Carol Shelton dated October 8, 1999, hereafter referred to as "Shelton Affidavit I," Ex. A to Defendant's Response to Plaintiff's Motion to Reinstate, Doc. 13).  By the terms of this proposed Release, the parties agreed that Ellison's termination date would be March 21, 1998, and that Ellison would receive severance pay in the amount of $9,039.60 as well as reimbursement for vacation days.  For her part, Ellison agreed not to bring suit "arising out of or by reason of Employee's employment or termination of employment" against "Employer" and its "successors, parents, subsidiaries, [and] affiliates."

The Agreement further provided that Ellison would be allowed 21 days prior to signing to discuss the severance terms with an attorney if she wished, and that she would have seven days after signing in which to revoke the Agreement.  Howrigon states in his affidavit that he explained the 21-day period to Ellison and encouraged her to take the time to review the Agreement and confer with an attorney if she had any questions or concerns.  (Howrigon Affidavit, at 3).  Ellison signed the Agreement on March 13, 1998 and did not revoke it within the seven-day post-signing period.

As noted above, the parties to the Agreement were Ellison and CIGNA HeathCare, an

operating division of CIGNA Corporation and an entity which encompassed both CGLIC and Lovelace. The Howrigon affidavit states that CIGNA HealthCare entered into the Agreement with Ellison "on behalf of CGLIC," although the Agreement itself mentions neither CGLIC nor Lovelace by name. The Agreement was signed by Carol Shelton as representative of CIGNA HealthCare, although at the time she signed the Agreement, Carol Shelton was an employee of Lovelace. (Shelton Affidavit I, at 1).

Ellison filed an EEOC claim against Lovelace on September 24, 1998 and filed this lawsuit on March 30, 1999. Lovelace now claims that Ellison is precluded from bringing this action, based on the release she signed in March 1998 in which she agreed that, in exchange for the severance pay and other benefits, she would not bring suit against CIGNA HealthCare or "its successors, parents, subsidiaries, affiliates, incorporated and unincorporated, past and present, and each of them," and that this includes Lovelace. Plaintiff disputes this assertion but has failed to raise a genuine issue of material fact on this claim, and the Court finds as a matter of law that the release is applicable to Lovelace and relieves it of liability in this case.

## **Standards for Summary Judgment**

A summary judgment proceeding is appropriately used to cut through the allegations of the pleadings and to determine if there is a triable issue. Summary judgment will be granted when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The court does not decide the issues of fact, but rather determines if there is an issue that must be resolved at trial.

Summary judgment is appropriate only if there is insufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). Thus, the court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., at 251-52, 106 S. Ct. at 2512. The court, in considering a motion for summary judgment, construes the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. Perry v. Woodward, 199 F.3d 1126, 1131 (10th Cir. 1999).

### Discussion

A. The Agreement Unambiguously Releases Lovelace From Liability.

Whether an ambiguity exists in a contract is not a question of fact to be determined by a jury, but rather is a question of law for the court. Design Professionals Ins. Companies v. St. Paul Fire & Marine Ins. Co., 123 N.M. 398, 401, 940 P.2d 1193, 1196 (Ct. App. 1997). Extrinsic evidence may be considered by the court in determining whether the facially unambiguous terms of a release are in fact ambiguous, Hansen v. Ford Motor Co., 120 N.M. 203, 206, 900 P.2d 952, 955 (1995), and evidence regarding intent or state of mind is appropriately considered on summary judgment. Nicholas v. Dept. of Health, State of Colo., 951 F.2d 1259 (Table, text in Westlaw), No. 91-1033, 1991 WL 268838, at *2 (10th Cir. Dec. 11, 1991), citing Wright v. Southwestern Bell Tel. Co., 925 F.2d 1288, 1291-93 (10th Cir. 1991). Although the parties to the Agreement and Release in this case were Ellison and CIGNA HealthCare, the Court finds that the release was intended to apply to Lovelace as a third party beneficiary to the agreement between Ellison and CIGNA HealthCare, and Lovelace is therefore relieved of liability in this matter.

5

One claiming to be a third party beneficiary of an agreement made by others has the burden of proving that the parties intended him to be a beneficiary of their agreement.  Hansen, 120 N.M. at 205.  He may prove the parties' intent by relying on the unambiguous language of the agreement itself, or on extrinsic evidence such as the circumstances surrounding execution of the agreement. Id.  On this summary judgment motion, Lovelace must therefore prove that there is no genuine issue of material fact as to whether Ellison and CIGNA HealthCare intended that Lovelace would be covered by the release.  Once Lovelace meets its initial burden, Ellison, as the party opposing the motion, must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial.  Anderson v. Liberty Lobby, 477 U.S. at 248-49; Biester v. Midwest Health Servs, Inc., 77 F.3d 1264, 1266 (10th Cir. 1996).  Ellison may not rest upon the mere denials of her pleadings to avoid summary judgment, nor will mere argument or contention of counsel suffice to defeat a *prima facie* showing.  Fed. R. Civ. P. 56(e); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  Even viewing the facts in the light most favorable to the nonmoving party, as the Court must on summary judgment,  Ellison failed to raise an issue for the jury as to whether Lovelace was intended to be covered by this Agreement, individually or as a member of a class of beneficiaries.


### 1.  Lovelace Was Within the Contemplation of the Parties to the Agreement

A third party to a contract who did not give consideration nevertheless has an enforceable right under the contract, "if the promised performance will be of pecuniary benefit to him and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract."  Casias v. Continental Cas.

Co., 125 N.M. 297, 960 P.2d 839, 843 (Ct. App. 1998).  The person who signed the release on behalf

of CIGNA HealthCare was an employee of Lovelace, as was the person who informed Ellison that

she was being terminated and explained the release terms to her.  Ellison herself argues that she was

highly integrated into the Lovelace operations.  She says she reported to and took directions from

Lovelace employees and handled Lovelace provider accounts.  She worked at a Lovelace office in

Albuquerque.

Given the close relationship between Ellison and Lovelace, and given the corporate affiliation

between Lovelace, CGLIC, and CIGNA HealthCare,[1] it is apparent that the parties intended that

Lovelace would be included in the terms of the release.  Ellison states, in her briefing on this motion,

that "[a] Settlement Agreement waiving claims was drawn up due to the fact that the Plaintiff had

mentioned that she was seeking legal counsel and may be filing charges with EEOC due to Lovelace's

discriminatory and illegal actions."  (Plaintiff's Response Brief, at 6).  Under the circumstances,

Ellison cannot validly argue that she could not reasonably have foreseen that Lovelace would be

affected by her performance under the Agreement, nor that Lovelace was "not within the reasonable

contemplation" of the parties to the Agreement.  Jaramillo v. Providence Washington Ins. Co., 117

---

[1]Lovelace presented evidence that it was at the pertinent time a corporate affiliate of CIGNA HealthCare, the signatory corporation to the Agreement and Release signed by Ellison, and that Ellison's direct employer, CGLIC, was likewise an affiliate of CIGNA HealthCare.  Ellison argues that Lovelace is "attempt[ing] to argue away their [sic] responsibility by providing the Court with charts and diagrams of their corporate structure," which Plaintiff cannot dispute because she was "not an executive with Lovelace and cannot completely verify or deny the corporate relationship of all of the companies involved."  (Plaintiff's Response Brief [Doc. 44], at 6).  Ellison, as the party opposing summary judgment, cannot create an issue of fact merely by resting on the allegations of the pleadings, or claiming that she has no way to verify corporate relationships.  It is not necessary that Ellison be an executive in order to verify corporate structure; reference tools are available which would enable her to challenge the corporate relationships as set forth by Lovelace, if she had grounds for doing so.  She has failed to do this, and the Court finds no genuine issue of fact regarding the corporate affiliations established by Lovelace.

N.M. 337, 343, 871 P.2d 1343, 1349 (1994).          Although it is not clear from the briefing, Ellison

appears to be arguing that she had an implicit, subjective intent that Lovelace would not be included

in the terms of the release, even though in signing the Agreement and accepting the benefits of the

severance package, she intended to release CIGNA HealthCare from liability arising from her

termination.  This is in spite of the fact that she "worked directly for a Lovelace employee and

reported to Lovelace's Human Resources Director when she had problems, . . . handled Lovelace

provider accounts, and took direction from Lovelace employers."  (Plaintiff's Response Brief, at 6).

Ellison's assertion of a unilateral, subjective intent does not raise a genuine issue of material fact.

Jaramillo, 117 N.M. at 342.

> As a matter of law, one party's subjective impressions, innermost
> thoughts, or private intentions, do not create an ambiguity . . . Plaintiff
> cannot establish an ambiguity merely by attempting to raise a factual
> issue as to what was the intent in his own mind  . . .
> Nor does it create an ambiguity for the jury to resolve.  [Internal
> punctuation omitted].

Hoggard v. City of Carlsbad, 121 N.M. 166, 170, 909 P.2d 726, 730 (Ct. App. 1995).  The Court

finds no issue of fact as to whether Lovelace was in the contemplation of the parties as one who

would be covered by the release at the time the Agreement was signed.

### 2.  Lovelace Was Designated in the Release by "Identifying Terminology"

In Hansen, the New Mexico Supreme Court recognized, as a matter of policy, that there is

an inherent ambiguity in any general release which contains "boilerplate general release language" that

"objectively purports to release the entire world from liability."  Id., at 206, 211.  However, there is

no such ambiguity with regard to "those persons specifically designated [in the release] by name or

by some other specific identifying terminology."  Id., at 211.

Lovelace was not named in the release, but was "designated by specific identifying terminology," when Ellison agreed that "no charge, complaint, claim or lawsuit of any kind will be filed in connection with any claim released by this Agreement and Release against *Employer, its successors, parents, subsidiaries, affiliates, incorporated and unincorporated, past and present,* and each of them . . .."  Ellison thereby released not only CIGNA HealthCare, but also CGLIC and Lovelace, from liability arising from her termination.  Lovelace was clearly intended to be included within the phrase, "successors, parents, subsidiaries, affiliates, incorporated and unincorporated, past and present, and each of them . . .."  The New Mexico Supreme Court has held that a phrase such as "predecessors or successors of interest" is sufficiently specific and unambiguous so that a predecessor corporation, although not specifically named in a release, was considered to be "specifically designated" and thus to fall within the coverage of the release (at least in its capacity as a former employer).  Garrity v. Overland Sheepskin Co. of Taos, 121 N.M. 710, 718, 917 P.2d 1382, 1390 (1996).  The same should apply to the designation "successors, parents, subsidiaries, [and] affiliates."  Lovelace is clearly an affiliate of CIGNA HealthCare and was intended to be considered as such by the parties to this Agreement.


    B.  <u>Duress</u>.

Ellison argues that if the release is found to cover Lovelace, it is nevertheless invalid because she signed it under duress. She states, in her affidavit in opposition to summary judgment,  that she signed the Agreement because she was the sole support of her family of five and needed the severance money to survive.  (Ellison Affidavit, Ex. 1 to Doc.  44, at ¶ 19).  Ellison also signed an affidavit in connection with her opposition to Lovelace's earlier motion to dismiss, in which she stated that she

signed the Agreement and Release under duress in that she "had not obtained equitable employment or a comparable position."  (Ellison Affidavit, Ex. 1 to Doc.  36, at ¶ 12).  Ellison's stated grounds for avoiding the release do not make out a case of duress sufficient to get to the jury.

Whether particular facts are sufficient to constitute duress is a question of law.  Gibson v. Wal-Mart Stores, Inc., 181 F.3d 1163, 1168 (10th Cir. 1999).  A release of liability may be set aside under New Mexico law only if it can be shown by clear and convincing evidence that it was the product of misrepresentation, fraud, undue influence, coercion or mutual mistake; otherwise, public policy of the state favors amicable settlement of claims. Hendren v. Allstate Ins. Co., 100 N.M. 506, 508, 672 P.2d 1137, 1139 (Ct. App. 1983).  Generally, a release supported by consideration and negotiated at arm's length will be enforced.  Moruzzi v. Fed. Life & Cas. Co., 42 N.M. 35, 75 P.2d 320, 331-32 (1938).  Duress is defined as "any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition." Pecos Constr. Co. v. Mortgage Inv. Co. of El Paso, 80 N.M. 680, 682, 459 P.2d 842, 844 (1969).

Ellison has not raised an issue of fact that employees of Lovelace or any of its corporate affiliates engaged in wrongful acts by which she was coerced into signing the Agreement against her will.  She was given 21 days to consider the Agreement and was encouraged to discuss it with counsel, and she was further given seven days after signing to revoke the Agreement.  Ellison signed the Agreement, accepted its benefits, and did not revoke.  The fact that she felt financial pressures and needed the money does not establish coercion, fraud, or wrongful act by Lovelace and does not raise an issue of fact with regard to duress.  Nicholas v. Dept. of Health, at *5; Bennett v. Coors Brewing Co., 189 F.3d 1221, 1230-31 (10th Cir. 1999).

The law surrounding waiver of federal employment discrimination rights also supports the

conclusion that Ellison effectively relinquished her right to sue.  Such rights may validly be waived

by agreement; however, the relinquishment must be knowing and voluntary, since waiver of federal

remedial rights will not lightly be inferred.  Torrez v. Public Svc. Co. of New Mexico, 908 F.2d 687,

689 (10th Cir. 1990).  In determining the voluntariness of a waiver, the courts must look beyond the

language of the agreement to a variety of factors held to comprise the "totality of the circumstances"

surrounding the making of the contract.  Id.  This analysis may appropriately be made on summary

judgment, *see, e.g.*, Wright v. Southwestern Bell Tel. Co., *supra*, and in the present case, the Torrez

factors compel the conclusion that Ellison voluntarily released Lovelace and its corporate affiliates

from liability.

       Factors to consider in determining whether a plaintiff has voluntarily waived her right to bring

an employment discrimination claim include:

> (1) the clarity and specificity of the release language; (2) the plaintiff's
> education and business experience; (3) the amount of time plaintiff had
> for deliberation about the release before signing it; (4) whether
> [p]laintiff knew or should have known his rights upon execution of the
> release; (5) whether plaintiff was encouraged to seek, or in fact
> received benefit of counsel; (6) whether there was an opportunity for
> negotiation of the terms of the Agreement; and (7) whether the
> consideration given in exchange for the waiver and accepted by the
> employee exceeds the benefits to which the employee was already
> entitled by contract or law.

Torrez, at 689-90.

       As was true in Wright, the Court cannot "find any genuine issues of fact based on . . . factors

enumerated in Torrez."  The release language in the present case is clear and specific.  Although the

court in Torrez found an issue of fact as to voluntariness, based in part on the failure to specifically

mention waiver of employment discrimination claims, the release in the present case specifically

11

mentions claims arising under the ADEA.[2]   Although other sorts of employment discrimination claims, such as those arising under Title VII, are not specifically mentioned in the release, it is apparent that "plaintiff knew or should have known [her] rights upon execution of the release"; she states that one reason the agreement was drawn up was "due to the fact that the Plaintiff had mentioned that she was seeking legal counsel and may be filing charges with the EEOC due to Lovelace's discriminatory and illegal actions."  (Plaintiff's Response Brief, at 6).

Ellison was given 21 days to deliberate prior to signing, and she was given an opportunity to, and indeed, was encouraged to seek legal counsel with respect to her rights before signing.  The parties have not submitted any evidence with regard to Ellison's education; however, her job title, Provider Information Manager, indicates that she is a person with some degree of business acumen and experience.  There is no indication in the record as to whether Ellison was given an opportunity to negotiate the terms of the contract; however, she was encouraged to consult with an attorney and could have done so and, with the assistance of counsel, could have attempted to strike a better bargain for herself.

The final factor is whether the consideration given in exchange for the waiver exceeds the benefits to which the employee is already entitled.  "The question of the adequacy of the consideration turns not on whether the plaintiff received as much as she would have if she had litigated and won, but rather on whether she received something to which she was not already unquestionably entitled."  Nicholas v. Dept. of Health, at *5.  It is not clear whether Ellison acquired anything to which she was not already unquestionably entitled.  She asserts in her Affidavit in opposition to summary judgment

---

[2]The statutory requirements for a knowing and voluntary waiver of an ADEA claim are set forth in 29 U.S.C. § 626(f).  Ellison has not raised a claim that Defendant failed to comply with this provision.

12

(at ¶ 18) that CIGNA's Personnel Manual does not provide that severance pay is contingent upon release of claims and a promise not to bring suit, but rather is determined according to length of service.  Lovelace, on the other hand, asserts that "Ellison accepted $9,039.60 for her release of all claims and a promise not to bring suit against her employer, as well as other consideration detailed in the Settlement Agreement."  (Lovelace's Reply Brief, at 2).

        This factor cannot be resolved on summary judgment.  However, the Court finds, under the "totality of the circumstances" test, that all the other Torrez factors compel a conclusion that  Ellison entered into the Agreement and Release knowingly and voluntarily, and she is now precluded from bringing this action.  The Court finds no genuine issue of material fact as to duress or voluntariness.


        IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc.42] is granted.


_____
Lorenzo F. Garcia
United States Magistrate Judge